481 S.W.2d 930 (1972)
NUECES COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NO. 3, Appellant,
v.
TEXAS WATER RIGHTS COMMISSION et al., Appellees.
No. 11906.
Court of Civil Appeals of Texas, Austin.
May 17, 1972.
Rehearing Denied June 21, 1972.
*931 Roger C. Butler, Robstown, Vinson, Elkins, Searls & Smith, Victor W. Bouldin, Clifford W. Youngblood, Houston, for appellant.
James R. Riggs, City Atty., Corpus Christi, I. M. Singer, Wood, Burney, Nesbitt & Ryan, Allen Wood, Corpus Christi, Baker & Botts, Edward S. Howell, Houston, Timothy L. Brown, Austin, for Texas Water Rights Commission.
Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., Roger Tyler and Vince Taylor, Asst. Attys. Gen., Austin, for other appellees.
SHANNON, Justice.
The main question to be decided is whether a conservation and reclamation district, under the circumstances of this case, could change the use of irrigation waters under its certified filing to municipal and domestic purposes as conditions change without filing an amendment to its certified filing and obtaining the approval of the Texas Water Rights Commission. We hold that it could.
This is a companion case to No. 11,907, Nueces County Water Control and Improvement District No. 3 v. Texas Water Rights Commission et al., 481 S.W.2d 924, which was decided by this Court today.
Appellant, Nueces County Water Control and Improvement District No. 3, appeals from the judgment of the District Court of Travis County sustaining the order of the Texas Water Rights Commission[1] dated February 7, 1968. The Commission's order, seemingly, was a partial cancellation of appellant's claimed rights under Certified Filing No. 70 and Permit No. 529. The appellees are the Commission and the City of Corpus Christi.[2] We will reverse the judgment of the trial court, and here render judgment that the order of the Commission dated February 7, 1968, be set aside and annulled.
In this summary the facts set out in the companion case will not be repeated unless necessary. Appellant, a conservation and reclamation district, was created in 1921 and since that time it has been the only source of water for Robstown. Appellant also supplies water to farms within its boundaries primarily for irrigation purposes. As Robstown's population increased, its metropolitan population now being about 21,000, its urban area occupied farmlands formerly supplied irrigation water by appellant. Appellant has acquired by deed all water rights for 372 acres which have been changed from farming to urban development, and the owners of about 3,750 acres have authorized appellant to change the portion of the irrigation waters to *932 which their land is entitled to the higher use of municipal and domestic purposes.
Appellant owns two water rights, Certified Filing No. 70 and Permit No. 529. Certified Filing No. 70 allows appellant to irrigate a total of 4,303.1 acres. Appellant is empowered by Permit No. 529 to appropriate 2,774 acre-feet of water per year for the irrigation of 1,109.5 acres and 166 acre-feet per year for a water supply for Robstown.
The 166 acre-feet of water for municipal purposes mentioned in Permit No. 529 soon became inadequate to supply Robstown. In 1926 appellant reported to the Commission's predecessor that it had used 185 acre-feet of water for municipal purposes. And after 1926 each yearly water service report showed steady increases in the annual quantities of water used for municipal purposes in keeping with the growth of Robstown. By 1947 municipal uses of the water had increased to 1,204 acre-feet per annum and to 1,515.65 acre-feet per annum by 1963. Though the Commission was notified of the increase of municipal uses for thirty-eight years, it made no effort to stop the practice until the initiation of the cancellation proceedings on December 1, 1965.
By its order of February 7, 1968, the Commission attempted to forfeit and cancel appellant's right to irrigate 1,146 acres of land under Certified Filing No. 70 by reducing the authorized acreage from 4,306 acres to 3,160 acres. Its order also presumed to limit the use of water under Certified Filing No. 70 to irrigation purposes only, and to limit appellant's total water rights for municipal and domestic use to the 166 acre-feet authorized for these purposes under Permit No. 529.
In summary, the Commission attempted to forfeit that portion of Certified Filing No. 70 which had been converted from irrigation to municipal and domestic uses prior to the hearings and to foreclose appellant's right to continue to convert water from irrigation to municipal and domestic uses as the need for irrigation declines and the need for municipal and domestic uses increases.
The judgment of the trial court sustained the Commission's order and the trial court concluded as a matter of law that appellant could not change the purpose of use of any water under Certified Filing No. 70 until it had applied for and obtained from the Commission an amendment authorizing such change. The appellees' position in the trial and here is that appellant could not, without amending Certified Filing No. 70 through Commission action, convert water formerly used for irrigation purposes under Certified Filing No. 70 to municipal and domestic purposes, and that as irrigation is reduced by urban spread, the water right is lost to that extent. Underlying the City's interest in this proceeding is its claim in the Nueces County lawsuit that appellant should be required to pay the City for all water used by appellant for municipal and domestic purposes over the 166 acre-feet per annum authorized by Permit No. 529, a claim for $218,143.51 in addition to $22,000.00 per year for each year after 1965.
Appellant's position is that it is authorized to change the use of irrigation waters under Certified Filing No. 70 to municipal and domestic purposes as conditions change and as the need of the people for the one use decreases and the need for the other use increases without being required to obtain an amendment to Certified Filing No. 70 from the Commission. We sustain appellant's position for several reasons.
Art. 7880-4a[3] empowers the directors of a district, such as appellant, to withdraw water from an inferior use, e. g. irrigation, to a superior use, e. g. domestic and municipal use.
Art. 7880-4a provides as follows:
"Preference in use of water.
Districts organized under the provisions of this Act may in the discretion *933 of their directors award use of waters of the district in the following order of preference and superiority, viz.:
1st. Domestic and municipal use;
2nd. Industrial use, other than the development of hydro-electric power;
3rd. Irrigation;
4th. Development of hydro-electric power:
5th. Pleasure and recreation.
Where the welfare of the district may require, the directors of such district may withdraw water from an inferior use and appropriate such water to a superior use, as hereinabove given discretionary preference. Whenever such diversion or withdrawal will affect a vested right, such withdrawal or diversion must be after condemnation proceedings as provided for in Section 126 of this Act. Acts 1925, 39th Leg., p. 86, ch. 25, § 4a, added Acts 1927, 40th Leg., 1st C. S., p. 496, ch. 107, § 3."
There is nothing in Art. 7880-4a or any other statute, of which we are aware, which would require a district to obtain the approval of the Commission before it could exercise the discretionary power which is vested solely in its directors.
The only condition stated in the statute is that a district must condemn any vested right which would be adversely affected by such conversion. There has been no showing made in this record of any injury caused by appellant's conversion. The owners of 70 percent of the irrigatable land in appellant's boundaries have consented to and encouraged such conversion and appellant has conveyances to all water rights to which 372 acres of land formerly under irrigation are entitled. Similarly, the City neither pleaded nor proved any adverse effect which the conversion would have on any of its vested rights.
Nor have we been shown a statute authorizing the Commission to amend a certified filing or requiring the Commission's approval before the purpose of use of water appropriated under a certified filing may be changed. With respect to the rules and regulations of the Commission, until 1964, they contained nothing concerning certified filings. The first rules and regulations were adopted in 1914, and there were revisions in 1917, 1925, 1945, 1953, 1955 and 1964. In the 1964 revision, Rules 605.1 and 605.2 provide procedures for amending "an existing water right" without public hearing and Rules 610.1 and 610.2 provide procedures for amending "permits and certified filings." Rules 610.1 and 610.2 may not be applied retroactively to invalidate appellant's conversion of water under Certified Filing No. 70.
Clark v. Briscoe, 200 S.W.2d 674 (Tex. Civ.App.1947, no writ) is not controlling in this case. The question there was whether or not the owner of a permit issued by the Commission after 1913 could change the place and purpose of use of his water from that specifically authorized in the permit. A certified filing was not involved. The rationale of Clark, supra, is that the necessity for obtaining approval of the Commission to change the authorized place or purpose of use of water under a permit is implied from the statutory policy and requirements relating to the grant of a permit in its original form, including the Commission's approval of the original place and purpose of use. Those reasons are absent in the instance of a certified filing since the State's approval of the place and purpose of use was not required in initiating a certified filing.[4]
We reverse the judgment of the trial court and here render judgment that the Commission's order of February 7, 1968 be set aside, and held for naught.
Reversed and rendered.
NOTES
[1] Usually referred to as the "Commission" in this opinion.
[2] Usually referred to as the "City" in this opinion.
[3] References are to Vernon's Texas Civil Statutes.
[4] See: The Irrigation Act of 1889 (Chap. 88, p. 100, General Laws, 1889); The Irrigation Act of 1895 (Chap. 21, p. 21, (751), General Laws, 1895); The "Burges-Glasscock Act" (Chap. 171, p. 358, General Laws, 1913).